Our third argument of the morning is in Appeal No. 24-31-10, Juan Mendez v. City of Chicago. Mr. Frankel is here, right? Yeah. Good morning. Good morning, Your Honor. It's a pleasure to be here. I'm Adam Frankel. I'm here on behalf of the Mendez plaintiff appellant. Thank you for allowing me a little additional time for this argument. And I believe it's warranted because this is a significant, more significant case than it might appear. I know your dockets are full and excessive force cases come across your desks often. But this case is significant due to the timing of the issuance of two decisions. It was already important, but it was heightened by the timing of a couple decisions. The U.S. Supreme Court issued Barnes v. Felix in May while this appeal was pending. And this very court issued Pam v. the City of Evansville just at the end of September. And that dealt directly with an excessive force case. The video evidence was a prominent part of it. And the Scott exception was implicated and applied in that case, which is also the district court in this case also didn't apply the Scott exception. And we strongly believe that it was misapplied. It's a very narrow exception. Mr. Frankel, before you get into the merits, I just want to confirm, you are only appealing the summary judgment decision as to the excessive force claim, correct? That's right. Not the searches? Okay. Yes, Your Honor, we believe that we have many colorable claims, but in order to devote our resources properly, we had to focus on this because of its great importance. I realize that this is a no-vote review, and the court might be tempted to frame the issue in the manner that defendants do, fact-finding expedition like the district court did. And that it has been said, this court has said that fact-finding is not an appellate court charges province. And that would be inappropriate. I understand that the court needs to play a certain role, but I can't emphasize enough how important it is to frame the issue here as whether the district court performed its limited task properly in determining whether a genuine issue of material fact exists for trial. There's no reason that what the district court judge did should not have been performed by a jury. Above all... As to the facts, Mr. Frankel... Yes, Your Honor. Are you disputing that the video evidence shows that Mr. Mendez had something in his hand? I know you're arguing it's not a gun, but are you disputing that that evidence shows he had something in his hand? It is a contested material issue of fact that is in dispute, yes. My question was a little bit different. Yes, Your Honor. We are disputing that. You are disputing that the video depicts that he had something in his hand? Yes, and whether he pointed it at the officers, which goes directly to whether the officer had a reasonable apprehension of serious harm. He was running away, and the district court observed in its recitation of the facts that he turned to look back over his shoulders to see where the officers were, and his arms flung in that direction. Mendez has consistently testified that the gun remained in his waistband the entire time, and the district court noted that there's nothing in the record to disturb that. This implicates Pam because while the gun spilled out from being shot, that is evidence where I believe the court and Pam may have overstepped or conflicted with this court's jurisprudence in using such evidence to support, to buttress this finding that it was a reasonable belief that Pam in that case presented. Because it's from hindsight, it's not 2020, and it's the reasonable belief of the officer at the time. Subsequent events cannot be used to retroactively corroborate a reasonable belief because they weren't known at the time. It's a singular piece of evidence. Is it your position when the district court said, I looked at the video, and I looked at the still images, and I see something in Mr. Mendez's hand? Is it your, and you obviously dispute that. Yes. Is it your position that in making that factual finding, the district court was using hindsight? Is that what you're just now arguing? I certainly believe that influenced his opinion and his interpretation of the video. But the video was subject, now open to numerous interpretations. This court has opined at length about how videos are subject to varying interpretations. This is the role of the jury. The district court took it upon itself to perform that role. And because of its initial finding that it could not say, which we maintain is indistinguishable, his finding that it's not clear enough, it does not irrefutably reflect. We cannot irrefutably conclude that he was holding a gun or pointing a gun in his hand. And that's what the court's order. There's no meaningful distinction between that and he was pointing something in his hand. And the court went on to kind of. So do you agree that if the video does show that he had something in his hand and he turned back toward the officers, that your client loses? No, Your Honor, I don't even think it's the place of the district court or this court to make that finding. I think it's. That's a separate question. Okay. If that finding was properly made, do you agree that your client cannot prevail? That there was something. If the determination that the video shows, contrary to what your client testified to, that he had something, not a gun, but something in his hand. And as he turned back, he pointed at whatever that something was at the officers, that your client would lose. I don't believe that the premise of. I understand you dispute the premise, but accept the premise. It's the fact finding that's the issue. Accept the premise. If that fact was accurately found, I think you have to agree under the law that your client would not prevail. But why is that fact found by the district court judge and not a jury? What is the cost benefit here? Again, I'm asking you to accept that. I know you don't want to accept the premise, but I'm asking you to accept the premise. I will stipulate that if a jury made that finding, then yes, of course. But a district court judge is not in that position. This court has, with beautiful prose, resist the temptation, the siren song, the allure of fact finding of the district courts, especially in excessive force cases. These are inherently fact-driven cases. There's no reason for the court to have made this decision, submit this to a jury, but chose to take it upon himself and do the court just usurp the role of the jury. That was a misappropriation, an overstepping, well-defined role. And the Scott exception is narrow, and it has a very high standard. It must be irrefutable where no one could find it. It could not be found interpreted in any other way. This court has said that video evidence thinks are not always what they seem. People based on inherent biases and different backgrounds may see video evidence a different way. The trial is a necessary part of the adversarial process. Mr. Frankel, can I ask you, can we shift to a different portion? Yes, please. And my question is this. So you've done a fine job, in my view, of articulating your point about the hand and that you can't see it. Do you agree, and maybe you don't, do you agree that the audio of the video picked up, you're going to have to help me on that, I think it's Officer Cook or Clark?  Cook, okay. That it picked up Mr. Cook's audio during the brief chase. Do you agree with that? I do, yes, Your Honor. Okay. And do you agree that that's been kind of recounted accurately? In other words, there were three or four statements like waistband, waistband, waistband in his hand? Yes, I do, Your Honor. Okay. What is the legal significance, okay, if that fact is not in dispute because at least that fact seems clear from the video? Set aside the hand thing. Okay. Okay. What's the legal, I'll give you time, don't worry about the time. Okay. What's the legal significance in the Fourth Amendment reasonable force claim like this of those facts in kind of this, you know, chasing in this scenario that played out? Well, the shooting officer could simply rely on the fact that his partner yelled out waistband, waistband, he's got it in his hand to justify any use of force. But I have to, I have to, I really want to, I can't understate the importance of balancing the interests of the government. This court in PAM talked about there needs to be a forcible felony committed to justify deadly force. He's running away. He's sitting on the porch with a youth and just talking when they approach. That's significant because it colors and that's where Barnes comes in. Because he asked the court to expand the scope of the totality of circumstances inquiry. And under that inquiry at the very beginning, he's placidly sitting on the porch. Why would he be a threat? And the officer, the shooting officer admitted, acknowledged that he's never had a suspect running away actually pose a realistic threat to him. The fact that Officer Cook yelled waistband, waistband is consistent with Mendoza's testimony that it remained in his waistband and only fell out when he, when he was shot. The fact that he saw it in his hand, maybe he, it could justify a scissor shooting. But that doesn't, it's not, that's a very narrow, that is the approach the Fifth Circuit takes that the U.S. Supreme Court explicitly rejected the moment of the two seconds before the shooting occurs. That's not what you're supposed to only include. So your point, I don't want to put words in your mouth. You should modify and correct what I'm about to say. But your point is that when you look at the totality of this, video and all, that there's enough ambiguity, enough uncertainty that the best way to resolve this is to send it to a trial. Absolutely, absolutely. That's your point. When you add it all up. Yes, sir. And I believe that Pam provides an excellent contrast. There, the officers knew. There was a telephone call to the police. There's a man trespassing in my yard. She described him. He fit the description. He pointed a gun at her. He pointed a gun at the dog. He was still trying to get into the house when the officers spent over a minute warning him. And then he turned to directly face them, and then the court could not determine whether he had a gun in his hand at the time of shooting or not. That is like this case, but it's completely different. In this case, at worst, Mendez would be guilty of unauthorized use of a weapon where no one was outside. And he was scared and he was running away. He was not facing them. The fact that he turned around and may or may not have his hand swung in that direction because of anatomy, these are all jury findings. I don't understand why the district court believes that that's its role, especially when it applied the Scott exception, which is a very narrow exception. And it only applies in certain circumstances where the evidence is irrefutable and entirely discredits the plaintiff's account of the events. And it didn't do that here. It simply didn't do that. That's why we believe the Scott exception was misapplied and that Pam provides an excellent contrast to that. Do you want to save some time? Yes, thank you. Yeah, very well. No problem. Okay. Let's hear from the city. May it please the court. The district court correctly granted summary judgment to defendants because the undisputed facts under the totality of the circumstances established that a reasonable officer would believe Mendez was pointing a gun at the officers, thereby justifying Officer Schur's use of deadly force. Summary judgment was also proper because, at a minimum, Officer Schur is entitled to qualified immunity since it was not clearly established that his use of force was excessive. Finally, with respect to Mendez's battery claim, unless this court has further questions, we are prepared to rest on our brief. Starting with the Fourth Amendment excessive force claim. The Constitution permits a police officer to use deadly force when the officer reasonably believes, again, under the totality of the circumstances, that an individual poses a significant threat of death or serious bodily injury to himself or others. Here, the totality of circumstances gave Officer Schur such a reasonable belief. Those circumstances consisted of the following. He encountered Mendez while responding to an alert that a shot was fired in the vicinity just minutes earlier. Mendez and the minor were the only individuals in sight, so he reasonably presumed that they knew something about the shooting. Officer Schur instructed Mendez and the minor to stand so he could ensure neither was concealing a weapon. Mendez's refusal to do so raised Officer Schur's suspicion. Then, as he approached, Mendez jumped off the porch and fled. He pursued him, believing that this individual possessed, in some form, a gun. And as he did, he instructed him and his partner instructed him to show his hands, and he continued to disregard. And as he did, he then heard his partner yell, waistband, waistband, waistband, which he interpreted as confirmation that a gun had been sighted. He then heard his partner yell, he's got it in his hands. And moments later saw Mendez again turn back, look back, and point an object that he believed to be a gun, based on all these circumstances leading up to this, at him. And at that moment, he fired his gun to protect himself and his partner and stopped once he saw the gun fall to the ground. Can I interrupt? You just said point. I know that that is the officer's position. I don't read the district court opinion as having made a finding that the officer pointed. I see the finding that Mendez had something in his hand. I see the finding that he turned, his right hand went up, either intentionally or inadvertently, impossible to tell. Where is the finding about pointing an object? That's fair. I'm glad you corrected that. It's more so that the interpretation, a reasonable interpretation is it's a point, but the finding itself was arm raised in direction at officers, and the ambiguity there, I suppose, is the intention of Mendez. It's not ambiguous that we contend on our position that that's a reasonable belief it was a point, but all the physical movements are uncontested. And given that totality of the circumstances under this court's case law, Supreme Court case law, it was entirely reasonable for Officer Schur to use deadly force, and this court has affirmed as such as recently as Pam. It has also done so in a number of other cases such as Johnson, Horton. And that robust case law speaks to also why qualified immunity is absolutely important here and warranted. If we address qualified immunity on the clearly established prong, how would that impact the battery claim or the state law claims, which were the court relinquished jurisdiction over? On the state law claims, it would not. It would also dispose of those because on the clearly established, certainly on the first prong, the constitutional violation, but if we address only the second prong clearly established, would that impact the battery? The reason it would not is because of the State Tort Immunity Act, and so that raises the bar for officers that they must have been acting willful and wanton, and I would argue the clearly established then gets them over that bar. You're now not acting at that level. Anything further? If the court has no further questions, we ask that this court affirm summary judgment for defendants. Okay. Thank you, Ms. Chapman. Mr. Franklin, you do have some rebuttal time left. You're welcome to use it. Thank you, Your Honor. Yep. For this court to seize this opportunity to clarify and define the boundaries of the Scott exception, it's been spoken as a narrow, pragmatic exception that applies when there's no reasonable disagreement in what it depicts, clear and irrefutable evidence, and it should not reject, the court should not reject a plaintiff's account just because the video offers some support for a governmental officer's version of events. Now, the court in this case, in its recitation of the facts, it noted that Mendez fell right before he was getting up, and the district court said, this is not to say that Mendez intentionally swung or extended his right arm in the officer's direction. Mendez got up and continued to run, looking back over his right shoulder to see where the officers were. In doing so, his right hand and arm swung in the officer's direction. This is construing the video. Reasonable minds could differ on what this is being depicted here. Mendez's testimony lays the foundation consistently that this was not, but this is not the purview of the district court, and it overreached and it exploited the Scott exception by using, by failing to use the inference in Mendez's favor. It refused to infer the facts in his favor, and discredited his entire testimony simply because he made a fact, finding a fact on his own, and then discredited Mendez's testimony. In Pam, the court, pivotal to the court's ruling in Pam, was the fact that the plaintiff had died. He could not refute anything that the video showed. He could not offer his own version of events, and that was very crucial, and I believe that the contrast should inform, between Pam and this case, should inform your decision, because it's very stark on the facts of this case here. Can I answer any further questions? I'm not hearing any questions. Mr. Frankel, many thanks to you. Thank you, Your Honor. You've done a fine job on behalf of your client. Thanks to the city as well, and we will take the appeal under advisement.